Nathan R. Sobel, J.
This is a proceeding under article 78 of the CPLR to review a determination of the State Liquor Authority (Authority) disapproving petitioner’s application *422 for a restaurant liquor license at premises 99 Jamaica Avenue, Brooklyn, N. Y. The judgment sought is to set aside the order of disapproval and direct the issuance of a license.
I do so order on the basis that the Authority’s determination is arbitrary and capricious.
At the basis of the Authority’s determination is the failure of the applicant to “ disclose ” an “ arrest ” which resulted in an acquittal by a court. Such determinations have been a constant source of irritation to the Legislature (and more recently the Constitutional Convention — see Report Executive Branch Committee — Subcommittee on Administrative Review, Testimony of Hyman Amsel at public hearing; see, also, proposed art. VI, § 7). A basic fault of the present administrative setup is that each agency is accuser-trier and Judge. This inevitably results in compartmentalized judgment. This “ resulted ” in the instant case in a denial of a restaurant license to the applicant for the “possession” by his wife — elsewhere than the premises sought to be licensed — of a single policy slip for the possession of which she and applicant were acquitted on June 20, 1967 by a Judge much “ wiser ” in these policy situations than the Authority’s officers.
At the outset the record establishes that the applicant had conducted a prior licensed business for many years without a violation. He had purchased the Jamaica Avenue property for what was to him a substantial sum of money. He had for many years conducted a nonlicensed luncheonette in the neighborhood at 2873 Atlantic Ave.
The pertinent facts are as follows:
On November 30,1966 petitioner filed the application for this liquor license of the Jamaica Avenue premises which he had recently purchased. At that time he did not report the arrest for the arrest had not as yet occurred.
The arrest occurred thereafter on December 19, 1966 at the Atlantic Avenue luncheonette. This was the commonplace “Monday morning precinct arrest.” The single slip (not in applicant’s handwriting) was allegedly found in his wife’s pocketbook in the kitchen.
Thereafter the routine hearing was held on January 23, 1967. The “ arrest ” was not then known to the hearing officer. At the hearing applicant was not represented by the lawyer who had filed his application. It was immediately obvious that applicant could not understand or express himself in English. Instead his wife was examined.
*423 At page 7:
‘1 Q Have you ever been arrested 1 A Recently there was some trouble in the store, but my lawyer said to give you the card and any further questioning to give the card and you can call them.”
As it appeared later, this was the card of the lawyer in the criminal charge who had told her quite correctly an “ arrest ” was not a conviction. The testimony of the applicant was that the lawyer told him to tell the hearing officer he was not guilty. (Petitioner never was asked the question at the first hearing).
Before the application was decided by the Authority the present attorney was retained. He immediately requested the stenographic record and wrote the Authority on February 24, 1967 disclosing the arrest and requesting that the hearing be continued for “ appropriate disclosure and explanation.”
It is pertinent to note that the routine investigation by the Authority had not as yet disclosed the arrest. The routine reports from the several police agencies were all received by the Authority after February 24, 1967, the date of counsel’s letter requesting an opportunity to make full disclosure.
At the argument of this motion as well as by the answer and briefs, respondent Authority creates the impression that the request for leave to make further disclosure was made after the Authority had received confirmation of the arrest. This is not so! The reports from the various police agencies were all received later.
I am absolutely certain that such conduct was inadvertent. I mention it at all only because the basic ground for denial of the application is not the arrest per se but the failure to disclose. I am quite certain this too was “ inadvertent ” on the part of the applicant.
At the continued hearing the petitioner for the only time was asked about the arrest and he gave the explanation that his lawyer told him to say that the arrest was not a conviction.
Despite a favorable report and a fair explanation by the hearing commissioner (see Exhibit N) the application was denied. I am convinced by circumstances — mainly the nature of the decision — that the decision was rendered without the Authority reading Exhibit N. It is inconceivable to me that it could be otherwise.
The denial is premised not so much on the arrest but on the failure of this illiterate applicant to report the arrest within 48 hours under a requirement of a pamphlet labeled “ Information to Applicants.” “ If any change in facts occurs after the *424 filing of the application and before its issuance, such change must be reported to the Authority within 48 hours.”
The decision makes no mention of any proof that the petitioner did (or could) in fact read the provision. And since the pamphlet has never been filed (N. Y. Const., art. IV, § 8; People v. Cull, 10 N Y 2d 123) there is no presumption that he knew it existed. I believe it appropriate however to mention the statute from which the instruction was derived. (Alcoholic Beverage Control Law, § 110, subd. 4.) That statute refers to “ convictions ” not “ arrests ” — and for felonies not misdemeanors — and provides that failure to notify the Authority of any “change” must be “wilful and deliberate.” This law petitioner was at least “ presumed to know.”
Our Constitutions, Federal and State, are full of “ protections ” most recently made applicable to a fuller extent to ‘ ‘ criminals. ’ ’ These same Constitutions also protect the property rights of decent hard-working individuals like this petitioner — and some day our high courts will get around to saying so. And I would predict that a first concern will be the utilization of “ arrests ” to deny licenses and employment. I have made only a few years ago a study of the mortality table for felonies in New York City (see “ The Mortality Table ” 30 Brooklyn L. Rev., Dec., 1963, p. 12 et seq.). It should prove educational to the Authority to obtain the experienced and studied judgment of the Judges who act under responsibility with respect to the “ value ” of an “ arrest ” for policy.
At the argument it was stipulated that Special Term determine the issue on the basis of whether the Authority’s determination was arbitrary and capricious (CPLR 7804, subd. [g]).
I find that there was no failure by the petitioner to disclose the arrest at the first hearing since he was never questioned specifically on the issue; that the failure to notify the Authority within 48 hours (the statute says 10 days) was unintentional; that failure to disclose an “ arrest” before final adjudication may not under these or any circumstances constitute a false statement of a material fact; that the failure to disclose, if indeed there was such a failure, was not with the purpose of influencing the Authority. On the total circumstances, I find that the decision of the Authority was indeed arbitrary and capricious.
As noted, I believe it was made without the Authority being aware of the continued hearing of May 25,1967 and the further report of Deputy Commissioner Myers (Exhibit N). It is *425 incredible to me that these factors, if considered, would not be mentioned in the decision. It is the only conceivable explanation of the Authority’s determination.
The decision is annulled and the issuance of the license directed.